228 F.2d 83
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 182,
UTICA, NEW YORK, AND VICINITY, AFL, Respondent.
 No. 124, Docket 23703.
 United States Court of Appeals Second Circuit.
 Argued Nov. 10, 1955.
Decided Dec. 2, 1955.
 
 Samuel M. Singer, Atty., N.L.R.B., Washington, D.C. (Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Nancy M. Sherman, Atty., N.L.R.B., Washington, D.C., on the brief), for petitioner.
 John J. Walsh, Utica, N.Y., for respondent.
 Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a petition for enforcement of an order of the National Labor Relations Board directing the respondent Union to cease and desist from maintaining a discriminatory hiring practice in violation of § 8(b)(1)(A) and § 8(b)(2) of the National Labor Relations Act, 29 U.S.C.A. §§ 158(b)(1)(A), 158(b)(2). The Trial Examiner and the Board both found that the Union had violated the Act through the actions of one Parks who threatened employees Jones and Zupan with loss of employment because of nonmembership in the Union and caused them to lose their employment. The two questions on this appeal are whether Parks was acting for the Union so that what he did may be imputed to the Union and, if so, whether the Board's order is proper insofar as it directs the Union to make Jones and Zupan whole for loss of pay from June 5, 1954 to July 8, 1954.
 
 
 2
 There was substantial evidence to support the Board's finding that to the union's knowledge Parks was the acting steward performing the usual functions of that office. The manager of the construction project where Parks, Jones and Zupan worked testified that Parks was the job steward, that Parks would obtain new men for the job, and that Parks brought grievances to his attention, in effect that Parks was the only one with whom he discussed grievances. The general foreman also testified that Parks was the job steward and that he secured drivers for the project. Parks himself testified that he was the 'active steward' and that he was appointed in June 1953 by two union members who were stewards on other jobs. He signed up new members, checked union books of employees to see that they were paid up, and remitted moneys collected to the Union.
 
 
 3
 The Union's business agent admitted that Parks took care of grievances, checked the union books of the men and contacted him on at least one occasion when the project needed men. The Union by-laws and the contract with the employer both provided that a job steward should be appointed for a job of this size. Indeed the testimony makes it clear that at all the times in question Parks was the only one who performed any of these functions of a steward on behalf of the Union. Despite the testimony of the business agent and the president of the Union that no one had been formally appointed to act as job steward and that Parks was not authorized to act as such, there is substantial evidence to support the findings of the Board, Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, that Parks was acting with the knowledge and acquiescence of the Union and that he had implied authority to do what he did.
 
 
 4
 The Board in its order directed the Union to compensate Jones and Zupan for back pay from February 18, 1954, when they were discharged, until September 14, 1954, when the Union notified them directly that it had no objection to their reemployment. On June 4, 1954 the Union had notified the Company that it had no objection to the reemployment of the two men. On July 8, 1954 the Board decided in another case that such notice must be given to the discharged employees in order to stop the running of back pay. Local Union 595, International Association of Bridge, Structural and Ornamental Iron Workers, 109 NLRB 73. The Union contends that prior to that case the Board's policy had been that notice to the employer was sufficient, and that insofar as the order requires back pay from June 5 to July 8 the new policy is made unlawfully retroactive. Whether such application of a change in policy would be unlawful we need not decide for we can find here no definitely established policy which was overturned by the Local 595 case. In Roadway Express, Inc., 1954, 108 NLRB 874, relied on by the Union, the Board was dealing with a situation where both the Union and the Company were respondents and the back pay order ran against them jointly and severally. In such a situation it was of course appropriate that the Union be liable for back pay only up to the time when it notified the Company that it had no objection to reemployment of the men discharged. After that time the Company would bear the burden of any further delay. The Union was not justified in deriving from that case an established policy that notice to the employer is sufficient when the employer is not a respondent and has no incentive to offer reinstatement to the discharged employee. Thus the Board's decision in Local 595 was not a reversal of prior policy. It was entirely reasonable and proper to provide, as the Board here did, that back pay should accrue until the time when the men who were improperly discharged were advised by the Union responsible for their discharge that they might be reemployed.
 
 
 5
 The petition for enforcement is in all respects granted.